UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | |
| **GOLDSBERRY'S TRANSMISSION REPAIR, INC.** | Case No. 11-8107-JKC-11 |
| Debtor. | |

**COMBINED SMALL BUSINESS CHAPTER 11 PLAN OF REORGANIZATION
AND DISCLOSURE STATEMENT**

Goldsberry's Transmission Repair, Inc., ("GTR"), Debtor and Debtor in Possession, ("Debtor" or "GTR"), hereby submits this Combined Small Business Chapter 11 Plan of Reorganization and Disclosure Statement, ("Plan"), pursuant to Chapter 11 of the United States Bankruptcy Code.

### I.     Relevant Code Provisions

**Small Business Matters**

Debtor is a small business Debtor as that term is defined under 11 USC § 101 (51D) because the aggregate of its debts is less than $2m, and therefore this case is a small business case under 11 USC § 101 (51C).  As such, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, ("BAPCPA"), this Plan may combine the information of a separate Disclosure Statement, ("Disclosure Statement").  By separate Notice filed with the Court at the same time as this Plan, the Debtor invoked Local Rule B-3017-2 (a)(3), by giving notice that it seeks the Court's approval of the Disclosure Statement information contained in the Plan.  Under such rule, this Plan may be disseminated to creditors for voting without separate approval of the Disclosure Statement information, although creditors may still object to the adequacy of such information at any hearing held on confirmation of the Plan.

**Creditor Voting on the Plan**

Creditors may vote on the Plan by filling out and mailing the accompanying ballot to debtor's counsel as indicated therein.  As a creditor, acceptance is important.  In order for the Plan to be deemed accepted, of the ballots cast, creditors that hold at least two-thirds in dollar amount and more than one-half in number of the allowed claims of all impaired classes must vote for the Plan.  No representations

concerning the Debtor (particularly as to its future income, value of property, or the value of any promissory notes to be issued under the Plan) are authorized by the proponent of the Plan, or the Debtor other than as set forth in this statement.  Any representations or inducements made to secure creditor acceptance which are other than as contained in this statement should not be relied upon by creditors in arriving at a decision on acceptance of the Plan, and such additional representations and inducements should be reported to counsel for the debtors who in turn shall deliver such information to the Bankruptcy Court for such action as may be deemed appropriate.  The information contained herein has not been subject to a certified audit.  For this reason, the proponent is unable to warrant or represent the information contained herein is without any inaccuracy, although great effort has been made to be accurate.

**Tax Ramifications**

BAPCPA requires a "discussion of the potential material Federal tax consequences of the Plan to the Debtors, any successor the Debtors, and a hypothetical investor typical of the holders of claims or interests in the case." 11 USC § 1125 (a)(1).  Under IRS Circular 230, to the extent this Plan is deemed a communication from counsel to the Debtors, and to ensure compliance with requirements imposed by the IRS, you are informed that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code, or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.  Among the many uncertainties of BAPCPA, this requirement is perhaps most difficult for the Debtors to address but, to the best of its ability to do so, the primary tax ramification to the Debtors is the reduction of tax attributes for debt forgiven as a result of the treatment of creditor claims under the Plan.  To the extent debt levels are reduced sufficiently to render the Debtors solvent, it is possible that taxable income may be recognized by the Debtors.

## II.    Definitions

The following terms when used in the Plan shall, unless the context otherwise requires, have the following meanings:

**Administrative Expense Claim:**

Any claim for expenses of this Chapter 11 case, pursuant to 28 U.S.C. Section 1930, and Section 503 (b) of the Code and entitled to priority under Section 507 (a)(1) of the Code, including, without limitation, (i) the actual and necessary costs and expenses of preserving the estate of the Debtor and of operating its business and (ii) the full amount of all claims for compensation for legal or other professional services or reimbursement of costs and expenses under Section 330 and Section 503(b) of the Code, to the extent each such claim is an allowed claim.

**Allowed Claim or Allowed Interest:**

Any claim against or interest in the Debtor, (i) the proof of which was filed on or before the date designated by the Court as the last day for filing proof of claims or interest, or (ii) which has been or hereafter is scheduled by the Debtor as liquidated in the amount and not disputed or contingent, and in either case, a claim or interest to which the Debtor has not objected or that has not been allowed by the Court.

**Bankruptcy Rules:**

The Bankruptcy Rules promulgated by the Supreme Court of the United States, which became effective on August 1, 1983 as amended.

**Bar Date:**

The last day for filing claims in this proceeding as fixed by the Court.

**Chapter 11 Petition:**

The Voluntary Petition filed to commence this case on June 27, 2011.

**Claim:**

Claim, as defined in Section 101(5) of the Code against the Debtors.

**Code:**

Title 11 of the United States Code as amended.

**Confirmation Date:**

Date on which the clerk of the Court shall have entered the Confirmation Order on the docket.

**Confirmation Order:**

Order entered by the Court confirming the Plan pursuant to the Code.

3

**Court:**

      The United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division.

**Debtor:**

      Goldsberry Transmission Repair, Inc, an Indiana for profit corporation, Debtor and Debtor in Possession, ("Debtor").

**Disclosure Statement**

      The Disclosure Statement information contained in this Plan, including any modifications, amendments, corrections or supplements.

**Effective Date:**

      Date on which the Confirmation Order becomes a Final Order.

**Final Order:**

      Order, judgment or decree of the Court as to which (a) any appeal that has been timely taken has been finally determined or dismissed; (b) the time or appeal has expired and no appeal has been timely taken in accordance with Rule 8002 of the Bankruptcy Rules and any applicable local procedural rule; or (c) an appeal has been timely taken, but such order has not been stayed within 10 days after the filing of such appeal.

**Interests:**

      The legal, equitable and contractual rights of Debtor.

**Persons**

      Has the meaning set forth in § 101(41) of the Bankruptcy Code.

**Plan:**

      This Plan of Reorganization, including any modifications, amendments, corrections or supplements.

**Priority Tax Claim:**

      Any claim entitled to priority pursuant to Section 507(a) (7) of the Code, to the extent such claim is an allowed claim.

**Professionals:**

      The Professional people and firms hired by the estate to represent the Debtor, including its counsel, management consultants and accountants.

### III.     Disclosure Statement Information

**History of the Debtor's Business**

The Debtor is a small independent automobile transmission repair shop owned and operated by Sam Goldsberry and his wife Louann since 2000. At various times since it opened, the business has had difficulties with State sales tax, and with the general decline in economic conditions that reduced sales dramatically in 2008, the business struggled with servicing the North Salem Bank, ("NSB") debt.

**Reasons for Filing the Case**

This case was filed in response to the effort by NSB, the primary secured creditor herein, to take possession of the operating assets of the business that serve as collateral for the NSB loans.

**Turn Around**

Operations have stabilized and the cash flow of the business is sufficient to fund the payments to be made under the Plan. The primary driver of the business' ability to service the debt under the plan is the imposition of reasonable terms for payment of the outstanding sales tax claims, and the amortization of the NSB allowed secured claim, which has been reduced to reflect the Bankruptcy Code's treatment of such claim to the value of the collateral securing it, over a reasonable period.

**Management**

Sam Goldsberry will remain as the officer of the Debtor in charge of its daily operation, at the same salary as he received prior to filing this case.

**What the Plan Does**

The Plan generally establishes a value for the assets used by the Debtor in the operation of its business, proposes to pay any creditor having an interest in that value such amount with commercially reasonable terms, and then devotes a share of future profits to the payment of unsecured creditor claims. The Plan also pays priority claims in accordance with the treatment allowed under the Bankruptcy Code.

**Financial Information**

The assumptions and financial projections forming the basis of the Plan are attached hereto as follows:

Exhibit "A" is a copy of the Summary of Schedules filed herein, which is intended to be used as a liquidation analysis of the Debtors' assets;

Exhibit "B" is the Debtors' budget, which is based on the expected future earnings of the Debtors and the changes made to their financial transactions with creditors as provided in the Plan;

Exhibit "C" is a summary of the main information available from the operating reports filed by the Debtors since this case was filed;

Exhibit "D" is a summary the amount the plan will pay to creditors.

### IV.     Classes of Claims

Claims are classified in the Plan based on the distinct legal rights attributable to each class, and the distinct business interests of the members of each class. The classes of claims treated under the Plan are as follows:

Unclassified Claims

Under 11 USC § 1123(a)(1), administrative expense claims, "gap" period claims in an involuntary case allowed under § 502(f) of the Code, and priority tax claims are not in classes in a Plan. They are, however, treated in the following manner:

Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code, and a "gap" claim in an involuntary case allowed under § 502(f) of the Code, will be paid in full on the effective date of this Plan in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Priority Tax Claims. Each holder of a priority tax claim will be paid consistent with 11 USC § 1129(a)(9)(C).

United States Trustee Fees. All fees required to be paid by 28 USC. §1930(a)(6) ("US Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any US Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

Class 1. Non Tax Priority Claims

All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under 11 USC § 507(a)(2), "gap" period claims in an involuntary case under § 507(a)(3), and priority tax claims under 11 USC

6

> § 507(a)(8)) will be paid as described below and in the exhibits attached to the Disclosure Statement.

Class 2.  Secured Claims

> All allowed secured claims under 11 USC § 506 will be paid as described below and in the attached exhibits attached to the Disclosure Statement.  (Note: 11 USC § 1129(a)(9)(D) provides that a secured tax claim which would otherwise meet the description of a priority tax claim under 11 USC §  507(a)(8) is to be paid in the same manner and over the same period as prescribed in 11 USC §  507(a)(8)).

Class 3   General Unsecured Non Priority Claims Including Secured Creditor Deficiency Claims

> All unsecured claims allowed under 11 USC § 502 will be paid as described below and in the exhibits attached to the Disclosure Statement.

Class 4.  Equity

> Equity interests of the Debtor as described below.

### V.    Treatment of Claims Under the Plan

**Class 1  Administrative Claims**

Normal budgeted expenses of the Debtor will be paid in the ordinary course of business.  Other administrative expense claims shall be paid in full.  Administrative expense claims include, but are not limited to, the compensation for services rendered and disbursements incurred by professionals whose retention has been approved by the Court, in connection with services performed in this Chapter 11 case.  The Debtor paid a retainer to certain of its professionals, all of whom may seek interim approval for fees prior to confirmation of the Plan.  Professional fees and expenses incurred by counsel to the Debtor and accountant to the Debtor.

Payments to professionals for compensation and reimbursement of expenses will be made in accordance with the procedures provided for in the Code and in any Order of the Court relating to the payment of interim and final compensation and expenses.  The Court will review and determine all requests for compensation and reimbursement of expenses.

**Class 2  Priority Claims**

Tax claims will be paid in accordance with the priority set forth in the Bankruptcy Code.  Class 2 claims are deemed to be impaired under the Plan.

**Internal Revenue Service ("IRS")**

The claim of IRS, if any, shall be treated as an allowed priority tax claim, under Class 2 of the Debtor's Plan in the amount set forth in the Order confirming the Plan, and a Class 3 general unsecured claim in the amount set forth in the Order confirming the Plan. This amount includes all of the Debtor's pre-petition federal tax liabilities for tax accruals for periods on or before the Petition Date. The Debtor believes it is current with all its federal tax obligations for the periods ending on and after the date of the petition in this case. To the extent there is an unpaid liability determined for post-petition periods, the Debtor shall pay said amounts in the ordinary course of business or make other arrangements for satisfaction of those liabilities.

The IRS pre-petition tax claim classification as priority shall be retained during the payment period of the Plan and in any subsequent bankruptcy case or proceeding.

The priority claims of the IRS shall be paid in full in equal monthly payments of not more than $0 per month, which amount is sufficient to fully amortize the total claim amount of $0k, and which payments shall begin on December 1 2011, and be made on or before the first day of each month thereafter. This monthly payment amount amortizes the net allowed priority claim amount over the sixty month payment term with interest at four percent (4.0%). The Debtor shall be allowed a ten (10) day grace period with respect to the timeliness of these obligations being deemed a default of the Plan. The Debtor shall have the right to pre-pay any principal of this tax liability in any amount in excess of $9,999.99 and re-amortize the remaining balance due over a shorter period or for a lesser monthly payment amount in order to save interest and increase the likelihood of a successful reorganization. Likewise, the Debtor has the right to pay off in full the outstanding principal balance due on the tax claims at any time with no charges for interest for time periods after the date of payoff.

All payments under the Debtor's Chapter 11 Plan shall be made to the IRS, by mail or delivery, unless notified otherwise, to:

>   Internal Revenue Service
>   Insolvency Section, Stop SB380
>   P. O. Box 44985
>   Indianapolis, Indiana 46244

8

Payments shall be deemed made on the date of receipt and shall be made by check or money order made payable to the United States Treasury and should be identified with the Debtor's bankruptcy case number and the Debtor's employer identification number.

The Debtor shall remain current with all its post confirmation federal tax obligations, including making deposits and payments and filing returns, during the period it is making the payments required under the Plan.  A failure to make post-confirmation tax deposits, payments, and filings in a timely fashion, as required by the Internal Revenue Code, shall be deemed a material default under the terms of the Plan.  The Debtor shall be allowed a twenty-five (25) day grace period with respect to the timeliness of these obligations being deemed a default of the Plan.  Said grace period shall not be applicable with respect to the Debtor being found liable for penalties and interest as determined by the Internal Revenue Code.

In the event of default, the IRS, shall have the option, at its discretion, to accelerate the entire indebtedness due the United States Treasury under the Plan without further approval of the Bankruptcy Court.

The IRS general unsecured claim, if any, shall be paid pro-rata with the other unsecured claims in class three in accordance with the terms set forth for class three in the Plan.

**Indiana Department of Revenue, ("IDR")**

The claim of IDR shall be treated as an allowed priority tax claim, under Class 2 of the Debtor's Plan in the amount set forth in the Order confirming the Plan, and a Class 3 general unsecured claim in the amount set forth in the Order confirming the Plan.

This amount includes all of the Debtor's pre-petition Indiana State tax liabilities for tax accruals for periods on or before the Petition Date.  The Debtor believes it is current with all its Indiana State tax obligations for the periods ending on and after the date of the petition in this case.  To the extent there is an unpaid liability determined for post-petition periods, the Debtor shall pay said amounts in the ordinary course of business or make other arrangements for satisfaction of those liabilities.

The Class 2 amounts for payment of the IDR claim shall be paid in full in sixty (60) equal monthly payments of not more than $898, which amount is sufficient to fully amortize the total claim amount of $54k with interest at four percent (4%), which payments shall begin on December 1, 2011,

9

and on the same day of each month thereafter. The Debtor shall be allowed a ten (10) day grace period with respect to the timeliness of these obligations being deemed a default of the Plan. The Debtor shall have the right to pre-pay any principal of this tax liability in any amount in excess of $4,999.99 and re-amortize the remaining balance due over a shorter period or for a lesser monthly payment amount in order to save interest and increase the likelihood of a successful reorganization. Likewise, the Debtor has the right to pay off in full the outstanding principal balance due on the tax claims at any time with no charges for interest for time periods after the date of payoff.

All payments under the Debtor's Chapter 11 Plan shall be made to the Indiana Department of Revenue, by mail or delivery, unless notified otherwise, to:

> Indiana Department of Revenue
> 402 W. Washington St., 5th Floor
> Indianapolis, Indiana 46204

Payments shall be deemed made on the date of receipt and shall be made by check or money order made payable to the Indiana Department of Revenue and should be identified with the Debtor's bankruptcy case number and the Debtor's employer identification number.

The Debtor shall remain current with all its post confirmation State and County tax obligations, including making deposits and payments and filing returns, during the period it is making the payments required under the Plan. A failure to make post-confirmation tax deposits, payments, and filings in a timely fashion, shall be deemed a material default under the terms of the Plan. The Debtor shall be allowed a twenty-five (25) day grace period with respect to the timeliness of these obligations being deemed a default of the Plan. Said grace period shall not be applicable with respect to the Debtor being found liable for penalties and interest as determined by the Indiana Department of Revenue.

In the event of default, Indiana Department of Revenue shall have the option, at its discretion, to accelerate the entire indebtedness due it under the Plan without further approval of the Bankruptcy Court.

The Indiana Department of Revenue general unsecured claim, shall be paid pro-rata with the other unsecured claims in Class 3 in accordance with the terms set forth for class three in the Plan. Upon payment of the amounts set forth herein, IDR shall release any liens it has.

**Hendricks County Treasurer, ("HCTreas")**

HCTREAS has a claim for unpaid personal property taxes assessed and assessable against the Debtor. The claim of HCTREAS shall be treated as an allowed priority tax claim, under Class 2 of the Debtor's Plan in the amount of set forth in the Order confirming the Plan.

This amount includes all of the Debtor's pre-petition taxes for tax accruals for periods on or before the Petition Date. The Debtor believes it is current with all its tax obligations for the periods ending on and after the date of the petition in this case. To the extent there is an unpaid liability determined for post-petition periods, the Debtor shall pay said amounts in the ordinary course of business or make other arrangements for satisfaction of those liabilities.

The Class 2 amounts for payment of the HCTREAS claim shall be paid in full in six equal monthly payments of not more than $101.34, which amount is sufficient to fully amortize the total principal tax claim in the amount of $601.02, with interest at four percent (4%), which payments shall begin on December 1, 2011, and on the same day of each month thereafter. The Debtor shall be allowed a ten (10) day grace period with respect to the timeliness of these obligations being deemed a default of the Plan. The Debtor shall have the right to pre-pay any principal of this tax liability in any amount in excess of $4,999.99 and re-amortize the remaining balance due over a shorter period or for a lesser monthly payment amount in order to save interest and increase the likelihood of a successful reorganization. Likewise, the Debtor has the right to pay off in full the outstanding principal balance due on the tax claims at any time with no charges for interest for time periods after the date of payoff.

All payments under the Debtor's Chapter 11 Plan shall be made to the CCTREAS, by mail or delivery, unless notified otherwise, to:

>Hendricks County Treasurer
>355 South Washington Street
>Danville, IN 46122

Payments shall be deemed made on the date of receipt and shall be made by check or money order made payable to the HCTREAS and should be identified with the Debtor's bankruptcy case number and the Debtor's employer identification number.

The Debtor shall remain current with all its post confirmation property tax obligations, including making deposits and payments and filing returns, during the period it is making the payments required

11

under the Plan. A failure to make post-confirmation tax deposits, payments, and filings in a timely fashion, shall be deemed a material default under the terms of the Plan. The Debtor shall be allowed a twenty-five (25) day grace period with respect to the timeliness of these obligations being deemed a default of the Plan. Said grace period shall not be applicable with respect to the Debtor being found liable for penalties and interest as determined by the HCTREAS.

In the event of default, HCTREAS shall have the option, at its discretion, to accelerate the entire indebtedness due it under the Plan without further approval of the Bankruptcy Court.

**Class 2 Secured Claims**

2.1    North Salem Bank

NSB shall be deemed to have an allowed secured claim equal to the value of its collateral of not more than $37,740k, (the "NSB Claim"). Such amount shall be paid by delivery of a Note bearing reasonable commercial terms, and calling for amortization of 100% of the principal amount of the NSB Claim over not less than 5 years with interest at 5% per annum and twelve monthly payments per year of $712.20. NSB shall be deemed to have a continuing lien on its personal property collateral which shall be released, (including any judgment lien), upon payment in full of the NSB Claim. NSB's claim is deemed to be impaired by the Plan.

**Class 3- General Unsecured Non Priority Claims Including Secured Creditor Deficiency Claims**

Class 3 creditor's claims shall consist of all creditors listed in Schedule F of the Schedules and Statement of Financial Affairs filed by the Debtor herein, and shall include any unsecured portion of a priority creditor's claim, and the deficiencies of North Salem Bank.  Class 3 claims shall be paid by quarterly installments of a pro rata distribution shared with the Class 4 creditor as indicated in Exhibit "D", equal to 50% of the net profits calculated in accordance with generally accepted accounting principles, and net of capital transactions and payments to be made under the Plan.  The calculation shall be performed by the Debtor at the end of each calendar quarter following confirmation of the Plan, with the payment being due thirty days after the end of each such quarter in which net profits exist, for twelve quarters.  Class 3 is impaired under the Plan and is entitled to vote.

**Class 4- Equity**

Sam Goldsberry and Luann Goldsberry, the owners of 100% of the shares of the Debtor, shall retain their interest as the sole owners of stock in the Debtor, in exchange for their efforts to promulgate and obtain confirmation of the Plan upon such confirmation, and their commitment to contribute cash needed by the Debtor to fund payments that are due under the plan if needed.

## VI.    Means for Execution of Plan

Debtor shall continue to operate its business in accordance with the budget and related projection of income, expense and cash flow attached to its Disclosure Statement, and shall pay from the income derived therefrom, the amounts required to satisfy creditor claims herein.  The Debtor will also pursue the Bankruptcy Assets using its Professionals and will pay the net proceeds received from any such assets as provided herein.

## VII.    Executory Contracts and Unexpired Lease

All executory contracts and unexpired leases of Debtor, which have not heretofore been specifically rejected pursuant to an Order of the Court, are hereby specifically rejected, with the exception of the lease for the operating premises of the Debtor, which lease is hereby expressly

assumed. Any individual or entity asserting a Rejection Claim in connection with such rejection shall file a proof of claim with the Clerk of the Court within 10 days after the entry of an Order approving such rejection or the Bar Date whichever is later. Any Rejection Claim, to the extent it is an Allowed Claim, shall be treated as an Unsecured Claim of Class 5, as appropriate.

### VIII.     Request for Confirmation Under Section 1129 (b)

If all of the applicable requirements of Section 1129(a), other than Section 1129(a)(8) relating to an impaired class, are met with respect to the Plan, the Debtor requests that the Court find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under and has not accepted the Plan. Upon such finding, the Court is requested to confirm the Plan pursuant to Section 1129(b) notwithstanding the failure of such impaired class to accept the Plan.

### IX.     Modification of the Plan

The Debtor may propose amendments or modifications of this Plan at any time prior to confirmation by notice to the creditors. After confirmation, the Proponent may, with the approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omissions, or reconcile any inconsistency in the Plan, or any order of confirmation, in such manner as may be necessary to carry out the purposes and effect of this Plan.

### X.     Retention of Jurisdiction of the Court

The Court will retain jurisdiction following confirmation of the Plan only for the following purposes:

1. Classification of any claims, the re-examination of claims which have been allowed for purposes of voting, and any necessary valuation of security pursuant to 11 U.S.C. Section 506. The failure of the Debtor to object to or to examine any claim for the purposes of voting shall not be deemed to be a waiver of the right to object to or re-examine the claim in whole or in part.

2. Fixing of allowances of compensation and other administration expenses.

3. Determination of the allowance or disallowance of claims and interests.

14

4. Determination of all questions and disputes regarding title to the assets of the estate and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to any right of the Debtor to recover assets pursuant to the provisions of the Code.  In addition, the Court's power shall include, but not be limited to, the power to hear, determine and approve settlements of such litigation; appoint or approve a disbursing agent or agents to receive the proceeds of such claim subject to further order of the Court; hear, determine and allow the payment of expenses incidental to such claims, and to make such other orders and determinations as may be reasonable and proper.

5. The administration or modification of the Plan after confirmation, the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan and entry of any order reasonably necessary in order to enforce and interpret the terms and conditions of this Plan.

6. Entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

7. Upon application of the Debtor, the Court may enter an order of consummation finally dismissing the case and ordering the payment of such additional administrative expenses as may have been accumulated during the consummation of this Plan.

8. Hearing and determination of any and all motions, adversary proceedings, applications and contested matters arising under or related to this Chapter 11 case or the Plan.

9. Rejection of any executory contracts that are not discovered prior to confirmation and allowance of claims for damages as to the rejection of such contracts within such further time as the Court may direct.

10. Hearing and determination of any other matters not inconsistent with the Code.

## XI.   Miscellaneous Provisions

1. <u>Headings.</u>  The headings in the Plan have been used for convenience and reference only, and do not constitute a part of the Plan or affect any of its provisions.

2. <u>Severability.</u>  Should any provision of the Plan be determined to be unenforceable, such determination shall in no way affect the enforceability of any other provision of the Plan.

3. <u>Governing Law.</u>  Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Indiana.

4. <u>Successors and Assign.</u>  The rights and obligations of any individual or entity named in the Plan shall be binding upon and shall inure to the benefit of the successor and assigns of such individual or entity.

5. <u>Effect of Confirmation.</u>  Upon confirmation of this Plan, or any amendment hereto or modification hereof, creditors whose claims have received treatment hereunder shall be barred from pursuing collection, taking action or otherwise attempting to enforce any rights against the Debtors except as specifically provided for herein.

6.  <u>Payment of Quarterly Fees pursuant to 28 U.S.C. §1930(a)(6).</u>  All quarterly fees owing to the United States Trustee shall be paid by the Debtor within 10 days of the entry of the order of confirmation or on the effective date of the plan, as required by § 1129(a)(12) of the Bankruptcy Code, and the payment of quarterly fees shall be made until the case is closed by order of the Court.  The Debtor, or the reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, Debtor shall submit to the United States Trustee a statement of all disbursements made during the course of each calendar quarter, whether or not pursuant to the Plan.

Dated: September 12, 2011, _____/s/  Sam Goldsberry
Sam Goldsberry, President
Goldsberry Transmission Repair, Inc. ("Debtor")

KC Cohen 04310-49
KC Cohen, Lawyer, PC
Attorney to the Debtor
151 N. Delaware St., Ste. 1104
Indianapolis, IN 46204
317.715.1845
fax 916.0406
kc@esoft-legal.com

17